IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN D. JONES,            ) | |
| )            | |
| Plaintiff,           ) | |
| )            | |
| v.                          ) | CIVIL ACTION NO. |
| )            | 1:10-CV-15-TFM |
| MICHAEL J. ASTRUE,   ) | |
| )            | |
| Defendant.          ) | |
| )            | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Kevin D. Jones ("Jones") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

### I.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

1

>Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

>(1) Is the person presently unemployed?
>
>(2) Is the person's impairment(s) severe?
>
>(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]
>
>(4) Is the person unable to perform his or her former occupation?
>
>(5) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[2] This subpart is also referred to as "the Listing of Impairments."

[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), quoting 42 U.S.C. §405(g).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Jones, age 20 at the time of the hearing, completed high school. His past relevant work includes employment as a fast food worker/cashier. He has not engaged in

substantial gainful work activity since his alleged disability onset date of November 25, 2007. Jones's application claims he is unable to work because of blindness.[5]

During Jones's administrative hearing he explained that he suddenly and unexpectedly lost almost all functional vision due to Leber's hereditary optic neuropathy, a rare genetic condition. He was placed on leave from his employment at Krystal for fear that he would injure himself, and received some job training for visually impaired persons. Jones's treating physician, Dr. David Turok, opined that Jones's vision in each eye could be corrected to 20/50, and that he should avoid activity requiring good vision until further testing is complete.[6] Dr. Turok's report was cited by Jones's counsel when presenting his case to the ALJ.[7]

The ALJ asked the vocational expert (VE) to consider Dr. Turok's opinion that Jones's vision could be improved to 20/50 in each eye. The VE stated that this corrected vision would not preclude Jones's past work, and would permit him to perform work as an information clerk, a dining room attendant, or a counter clerk.[8]

The ALJ found Jones is severely impaired by a sudden loss of visual acuity which does not meet or medically equal listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ explained that listing-level disability requires an individual's vision in the better eye to be 20/200 or less, and Jones has 20/50 vision after correction.[9] The ALJ found Jones can perform a full range of work at all exertional levels, but his

---

[5] R. at 107.
[6] R. at 198-99 (Exhibit 4F).
[7] R. at 24.
[8] R. at 30.
[9] R. at 11-12.

5

vision limits him to the following: avoidance of ladders, ropes, scaffolds; occasionally climb ramps and stairs, balance; frequently stoop, kneel, crouch, crawl; jobs which do not require normal bilateral vision; and avoidance of even moderate exposure to unprotected heights and dangerous machinery.[10]

The ALJ stated her reliance on the opinion of Dr. David Turk, M.D.[11] Great weight was assigned Dr. Turok's opinion, as the ALJ found it was well supported and consistent with the other medical evidence of record.[12] The ALJ also noted the consistent findings by a State Agency medical consultant, Fred Thompson, M.D.. Dr. Thompson found Jones has decreased vision, correctible to 20/50, but is not blind and his visual fields are not significantly decreased.[13] The ALJ's RFC findings incorporated the limitations recommended by Dr. Thompson. The ALJ found Jones's testimony was not entirely credible because it revealed an ability to perform his past work even after the onset of his vision loss. The ALJ found that Jones is certainly limited due to his vision, but he is not completely debilitated and precluded from all substantial gainful activity.[14] The ALJ relied on the VE's testimony that Jones's vision, when corrected to 20/50, permits him to perform his past work. The ALJ further cited the VE's opinion that Jones can work as an information clerk, dining room attendant, or counter clerk.[15] The finding

---

[10] R. at 12.
[11] The ALJ spelled the physician's name "Turk," but both parties spelled the name "Turok." The Court uses the parties' appellation for Jones's physician.
[12] R. at 13.
[13] R. at 201-07.
[14] 13-14.
[15] R. at 14-15.

that Jones can return to past work and other occupations, led the ALJ to conclude he is not entitled to disability benefits under the Act.[16]

### III. ISSUE

Jones raises a single issue for judicial review:

Whether the ALJ erred by relying on an unsigned report of a consulting physician.

### IV. DISCUSSION

#### 1. The ALJ did not err by relying on the consulting physician's report.

Jones argues the ALJ improperly relied on an unsigned report from a treating/consulting physician, in violation of regulations at 20 C.F.R. §§ 404.1519n(e) and 416.919n(e). The Commissioner argues the report was properly signed, and alternatively, that any error was harmless because other medical evidence in the record supports the ALJ's findings.

At the outset of Jones' administrative hearing, the ALJ gave notice that certain exhibits would be admitted into the record subject to objections by Jones's counsel. No objections were raised to the admission of the exhibits, which included Exhibit 4F (R. 198-99).[17] Document 4F is a Report of Examination performed on November 14, 2007 by Dr. David Turok. The report appears to have been stamped with Dr. Turok's signature on December 18, 2007. The report was cited by Jones's counsel when he questioned Jones before the ALJ, and by the ALJ when she questioned the VE.[18]

---

[16] R. at 15. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).
[17] R. at 20.
[18] R. at 24, 30.

7

Jones did not challenge the reliability of the information contained in Dr. Turok's report during the hearing. His only challenge in this appeal is whether the report conforms to program regulations which state "[A] rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable." 20 C.F.R. §§ 404.1519n(e), 416.919n(e). Jones asks this Court to discredit the report on technical grounds where it was admitted without objection, and relied upon during the administrative hearing by his own counsel.

The Court's review of the report cannot support the Commissioner's argument that it was properly signed by Dr. Turok in accordance with the cited regulations. The Commissioner urges the Court to find, alternatively, that the ALJ's reliance on the report constitutes harmless error because other medical evidence supports the ALJ's decision. *Pichette v. Barnhart*, 185 Fed.Appx. 855, 856 (11th Cir. 2006) (affirming Commissioner despite indications that someone other than consulting physician initialed a psychological report). *Pichette* addressed the adequacy of a report initialed by someone other than the opining physician, and demonstrates harmless error under the regulation(s) at issue where there is no substantive objection to a document's contents. Here, the issue is whether an ALJ may rely on a report with a rubber-stamp signature despite the absence of any other objection to the contents of the report.

Jones's lack of previous objection to Dr. Turok's report, and reliance on the contents of the report during his administrative hearing, prevent him from claiming error after the ALJ relied on the report to find he is not disabled. "Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to

8

raise in timely fashion before an administrative agency." *Mahon v. U.S. Dept. of Agriculture*, 485 F.3d 1247, 1254-55 (11th Cir. 2007), quoting *Sims v. Apfel*, 530 U.S. 103, 114, 120 S.Ct. 2080, 2087 (2000) (Breyer, J., dissenting).  Further, the record contains objective findings from Dr. Thompson's State Agency report which are consistent with Dr. Turok's findings.  *Pichette*, *id*. at 856.  Accordingly, there are no grounds for reversal of the Commissioner's decision in this case.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.


DONE this 30th day of November, 2010.

>/s/ Terry F. Moorer
>TERRY F. MOORER
>UNITED STATES MAGISTRATE JUDGE

9